IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 JUN -7 AM 11: 12

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| MICHAEL JAY DULIN, | X | |
| Plaintiff, | X | |
| vs. | X | No. 04-2809-B/P |
| GEORGE H. BROWN, JR., et al., | X | |
| Defendants. | X | |

ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Michael Jay Dulin, a resident of Eads, Tennessee, filed a <u>pro se</u> complaint that asserted claims arising under 42 U.S.C. §§ 1983 and 1985(3) and Tennessee law on October 8, 2004. Plaintiff paid the civil filing fee. The Clerk shall record the defendants as Shelby County Circuit Court Judge George H. Brown, Jr.; S. Denise McCrary, a private attorney; Stephanie M. Micheel, a private attorney; and Kay G. Bardele, a resident of Georgia. On February 15, 2005, plaintiff filed an irregular document, entitled "Judicial Notice of Adjudicative Facts," that appears to be a complaint about the clerk's refusal to issue summonses until the case has been screened.

This action arises out of a divorce proceeding in Shelby County Circuit Court involving the plaintiff and Bardele, his ex-wife. Defendant Brown presided over the divorce action, and defendants McCrary and Micheel represented Bardele. On October 18, 2003, Bardele

filed a petition in state court seeking to hold plaintiff in civil and criminal contempt due to his purported failure to pay child support pursuant to a Marital Dissolution Agreement that was incorporated into a Final Decree of Divorce. Compl., ¶ 8.[1] The summons was served on Dulin on November 18, 2003, id., ¶ 9, and he contends that, because it was not served within thirty days of its issuance, under Tennessee law "[d]efendants failed to preserve the commencement of their lawsuit and thus had no legal action at law," id., ¶ 10. Plaintiff also complains that he was afforded insufficient notice of the contempt hearing, in violation of Tennessee law. Id., ¶ 11. Dulin alleges he appeared at the hearing on November 21, 2003 for the sole purpose of raising the invalidity of service and his need for additional time to retain counsel. Id., ¶ 12. Upon the representation of defendant McCrary that Dulin had proceeded pro se in connection with previous contempt petitions, id., ¶ 15,[2] defendant Brown proceeded with the hearing, id., ¶¶ 16-17. In response to the judge's questions concerning his financial condition, id., ¶ 18, plaintiff refused to provide any information without first consulting with an attorney, id., ¶ 19; see also id. at ¶¶ 20-21. The judge told the plaintiff that he would be held in civil contempt for refusing to answer his

---

[1] On October 7, 204, Dulin attempted to remove a subsequent petition for criminal and civil contempt filed by his ex-wife on August 16, 2004. Dulin (Bardele) v. Dulin, No. 04-2804-B/P (W.D. Tenn.). In an order issued on November 4, 2004, the Court remanded that petition to state court.

[2] The Tennessee Court of Appeals has had two occasions to consider matters arising out of the divorce of Dulin and Bardele. Dulin v. Dulin, No. W2002-02758-COA-R3-CV, 2004 WL 1238142 (Tenn. Ct. App. June 3, 2004) (affirming order holding Dulin in contempt of court and assessing arrearages of child support and attorney's fees); Dulin v. Dulin, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003) (upholding orders in connection with, inter alia, custody dispute).

questions. Id., ¶ 22. According to the Dulin, the procedure used by defendant Brown did not comport with Tennessee law. Id., ¶ 23. While plaintiff was being arrested, the judge allowed Bardele to testify without affording the ex-husband the opportunity to cross examine her. Id., ¶ 24. The judge continued the criminal contempt hearing to January 9, 2004 and allowed Bardele to be absent, thus ensuring plaintiff would have no opportunity to cross examine her. Id., ¶ 25. Before being taken to jail, plaintiff offered to answer the questions, but defendant Brown replied that it was too late. Id., ¶ 26. Plaintiff spent the next four days in jail. Id., ¶ 27.

Dulin, who was then represented by counsel, appeared at the continuation of the contempt hearing on January 9, 2004. Id., ¶ 33. Defendant Brown rejected counsel's argument that service was improper. Id., ¶¶ 33-37. Plaintiff was sentenced to fourteen days in jail for contempt. Id., ¶ 38.

The plaintiff seeks compensatory and punitive damages.

According to the Sixth Circuit, "a district court may not sua sponte dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." Apple v. Glenn, 183 F.3d 477, 478 (6th Cir. 1999) (per curiam); see also Benson v. O'Brian, 179 F.3d 1014 (6th Cir. 1999); Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983). There is an exception to this general rule, however, that permits a district court to dismiss a complaint "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated,

unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple, 183 F.3d at 478 (citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). Applying these standards, plaintiff's complaint is subject to dismissal in its entirety.

First, plaintiff's claim for money damages against Judge Brown in his official capacity is, in effect, a claim against the State of Tennessee. Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 164-65 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984). Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court. Graham, 473 U.S. at 165-66; Pennhurst, 465 U.S. at 98-100; Quern v. Jordan, 440 U.S. 332 (1979). Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). Accordingly, the plaintiff's claims against Judge Brown in his official capacity are barred by the Eleventh Amendment.[3]

Likewise, the plaintiff's claims against Judge Brown in his individual capacity are barred by absolute judicial immunity. See Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 359-60 (1978); Pierson v. Ray, 386 U.S. 547, 553-54 (1967); DePiero v. City of Macedonia, 180 F.3d 770, 783-84 (6th Cir. 1999); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997); King v. Love, 766 F.2d 962, 965 (6th Cir. 1985). This immunity extends to any claims against Judge Brown arising under Tennessee law. Cashion

---

[3] Moreover, plaintiff's claim pursuant to 42 U.S.C. § 1983 against the State of Tennessee is also subject to dismissal on the ground that a state is not a person within the meaning of § 1983. Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Will v. Michigan, 491 U.S. 58, 71 (1989).

4

v. State, No. 01A01-9903-BC-00174, 1999 WL 722634, at *3-*5 (Tenn. Ct. App. Sept. 17, 1999); Heath v. Cornelius, 511 S.W.2d 683 (Tenn. 1974).

In his complaint, Dulin contends that judicial immunity is inapplicable here because, by questioning Dulin himself, the judge acted outside his judicial capacity by initiating the criminal contempt prosecution. This position is without merit. First, the plaintiff does not dispute that Judge Brown had subject-matter jurisdiction over the contempt petition.[4] Pursuant to Tenn. Code Ann. § 16-10-101, a circuit court is a court of general jurisdiction. That jurisdiction extends to domestic relations, Tenn. Code Ann. § 16-10-108 ("The circuit court has concurrent jurisdiction with the chancery court to grant divorces, to authorize the adoption of children, to release testamentary and other trustees, and to appoint trustees in place of those released or dead, and also to decree, on petitions of trustees, by will or otherwise, for the sale of property, real or personal."), and to child support orders, id., § 36-5-101(a)(2)(A) ("Courts having jurisdiction of the subject matter and of the parties are hereby expressly authorized to provide for the future support of a spouse and of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the

---

[4] Stump v. Sparkman, 435 U.S. at 356-57 ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. . . . [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of jurisdiction because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'") (citation omitted).

5

court having jurisdiction thereof, including levy of execution."). Likewise, circuit courts have contempt powers. Id., §§ 16-1-103 ("For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code."); 29-9-102(1) & (3); 29-9-103. The failure to obey an order directing the payment of child support can result in civil or criminal contempt. Id., § 36-5-104; see Bryan v. Leach, 85 S.W.3d 136, 158-61 (Tenn. Ct. App. 2001). In this case, the Petition for Civil and Criminal Contempt, filed by attorneys McCrary and Micheel on behalf of Bardele, invoked the circuit court's jurisdiction pursuant to Tenn. Code Ann. § 36-5-104.[5]

Relying on the judge's questioning of him, the plaintiff contends that Brown acted in a nonjudicial capacity. "The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his official capacity." Stump, 435 U.S. at 362. Moreover, a judge is not automatically stripped of his judicial immunity when the particular act in question is not a function normally performed by a judge. Instead, "the relevant inquiry

---

[5] Although he does not contest that the state court had jurisdiction over the contempt petition, plaintiff argues that there was no personal jurisdiction over him because of the purportedly defective service. Compl., ¶ 31. As a preliminary matter, plaintiff has cited no authority for the proposition that, under Tennessee law, a circuit court lacks personal jurisdiction over a party where a summons is served less than thirty days before a hearing. Moreover, even if plaintiff's position was accepted, at worst the state-court judge acted in excess of his authority, rather than in the absence of all authority. Judicial immunity may not be pierced for lack of personal jurisdiction. Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001); Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000) (en banc) ("Only in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity.").

is the 'nature' and 'function' of the act, not the 'act itself.' . . . In other words, we look to the particular act's relation to a general function normally performed by a judge." <u>Mireles v. Waco</u>, 502 U.S. at 13.

Plaintiff relies on <u>Lopez v. Vanderwater</u>, 620 F.2d 1229 (7th Cir. 1980), in which a state-court judge, who also had some interest in rental property, ordered a former tenant who had returned to the premises arrested and, without benefit of a prosecutor, arraigned, convicted, and sentenced the tenant in the police station. The judgment was subsequently vacated. Although the Seventh Circuit held that the judge was absolutely immune for his acts of arraigning, convicting, and sentencing the plaintiff, <u>id.</u> at 1235, he was not entitled to judicial immunity for his prosecutorial acts, which consisted of the following:

> Vanderwater acted as prosecutor. He made the decision to prosecute. He determined the offense to be charged, originally contemplating criminal trespass and then deciding on theft of the key. He prepared a written charge on the "Notice to Appear" form. He caused Gamble to sign the blank complaint form and the next day had that form completed by the State's Attorney's staff. He prepared a guilty plea and waiver of jury and caused a signature, which he says was Lopez', to be placed thereon. Finally, Vanderwater presented the charge and plea form to himself with the expectation that it would be the basis for an unconstitutional conviction and sentence. These acts were not functions "normally performed by a judge." They were not, therefore, "judicial acts" and are not, as a consequence, protected by judicial immunity.

<u>Id.</u>

Plaintiff also cites, but does not discuss, <u>Sevier v. Turner</u>, 742 F.2d 262 (6th Cir. 1984), a case involving civil contempt proceedings for nonpayment of child support in the Shelby County

7

Juvenile Court. One of the defendants was a Juvenile Court Judge who, under a contract with Shelby County, allegedly performed the prosecutorial function of collecting overdue child support. The judge was alleged to have threatened to prosecute fathers who were delinquent on their child support payments in order to extract consent orders obligating the fathers to pay specified amounts of child support per week. Fathers who failed to comply with the consent orders were allegedly held in civil contempt and ordered to make "purge" payments or incarcerated or both. Id. at 265, 271. The Sixth Circuit held that the judge was not entitled to judicial immunity for his "involvement in initiating both the criminal prosecution and the civil contempt proceeding," as those acts were prosecutorial, rather than judicial, in nature. Id. at 272.[6]

The Sixth Circuit has emphasized the narrow scope of the exception to judicial immunity recognized in cases such as Lopez and Sevier:

> The decisions . . . reveal a common theme: despite its breadth, the doctrine of absolute judicial immunity does not protect a judge performing the purely prosecutorial functions involved in initiating criminal prosecutions. This is especially true where the judge initiates criminal prosecutions based on the judge's private interests, completely separate from cases brought to court independently by the parties. Nonetheless, this exception to absolute judicial immunity when a judge engages in purely prosecutorial functions is narrow. . . . Moreover, even when a judge engages upon prosecutorial functions, the broad shield of absolute judicial immunity is not automatically overcome. . . . [A] judge can still be acting in a judicial capacity for immunity purposes when undertaking seemingly prosecutorial functions in a case brought before the judge independently by the parties.

---

[6]   The lawsuit in Sevier was settled with a consent decree in 1990 that eliminated the practices discussed in the text. Johnson v. Turner, 125 F.3d 324, 329-30 (6th Cir. 1997).

8

> Thus, the protection afforded by absolute judicial immunity is not foreclosed when an action, even if prosecutorial in nature, relates to a function normally performed by a judge or where the parties are dealing with the judge in his judicial capacity.

Barnes v. Winchell, 105 F.3d 1111, 1118-19 (6th Cir. 1997) (citations omitted); see also id. at 1121-22.

Subsequently, in Barrett v. Harrington, 130 F.3d 246, 257 (6th Cir. 1997), the Sixth Circuit considered whether "a judge's instigation of a criminal investigation against a disgruntled litigant, taken to protect the integrity of the judicial system, is a 'judicial act' and therefore entitled to absolute judicial immunity." The defendant in Barrett, a state court judge, wrote to prosecutors to request a criminal investigation of the plaintiff, allegedly because he appeared to be stalking her after she ruled against him in a matter that was before her. Although the Sixth Circuit noted that the actions of the judge were not a function normally performed by a judge, id.,[7] the judge's act was nonetheless judicial in nature:

> After stripping Judge Harrington's act of its particularities and peculiarities, we find the general function of Judge Harrington's conduct in writing to the prosecuting authorities was to protect the integrity of the judicial decision-making process. Clearly, there was a direct relational nexus between Harrington's judicial decisions, Barrett's response in "investigating" and

---

[7] The Court explained:

Thus, the act of writing a letter of complaint to prosecuting authorities is distinguishable from these [judicial] acts, as this type of conduct can, and usually is, undertaken by a citizen complainant or law enforcement personnel. Furthermore, the instigation of criminal proceedings, by definition, is not adjudicatory in nature and does not resolve a dispute between two parties, but rather initiates one.

Id.

threatening her, and Harrington's response in contacting the prosecuting attorneys. Based upon what Ms. Nixon and Mr. Brinton told her that Barrett had said about her, and their expression of concern for her safety arising out of his conduct, Judge Harrington understandably felt threatened by Barrett's statements, and the letters she wrote to the prosecutors were clearly designed to address and deter such conduct, and directly related to her role in adjudicating the case which engendered Barrett's conduct in the first place. Just as a party's citation for contempt against a party who obstructs justice is a judicial act taken to preserve [the] integrity of the judicial system, so too is the instigation of criminal proceedings against a disgruntled litigant whose conduct may amount to obstruction. It would make little sense, and only promote form over substance, for us to say that a judge's response in redressing threatening conduct which she physically observes (e.g., contempt) is entitled to the cloak of judicial immunity, but her action in redressing a threat arising in reaction to her adjudicatory actions which she is told of by others is not entitled to the same level of immunity. The import is in the nexus between the Judge's action which gave rise to the threat and her response to the threat, not simply the response itself.

We, therefore, hold that in circumstances in which a judge reasonably perceives a threat to himself or herself arising out of the judge's adjudicatory conduct, the judge's response, be it a letter to a prosecutor or a call to the Marshall's office for security, is a judicial act within the scope of judicial immunity.

Id. at 259; see also id. at 260 ("[B]ecause Harrington dealt with Barrett in her judicial capacity, and because we find that a judge instigating a criminal investigation against a disgruntled litigant who has harassed her is a judicial act, we find that Judge Harrington is entitled to absolute judicial immunity regarding her statements to prosecuting authorities.").[8]

In Cooper v. Parrish, 203 F.3d 937, 944 (6th Cir. 2000), the Sixth Circuit rejected a claim that a state-court judge was not

---

[8] The Sixth Circuit also held that the judge was not entitled to absolute immunity for allegedly false and defamatory statements she had made to the media about the plaintiff. Id. at 261.

entitled to absolute judicial immunity "because he engaged in unethical conduct and acted as a de facto counsel when he gave prosecutors 'ex parte legal advice as to how the pleadings and/or supporting documentation in such lawsuits [involving certain nightclubs offering nude dancing] should be drafted so as to ensure issuance of ex parte orders to close the Plaintiffs' nightclubs or showbars.'" The Sixth Circuit concluded that the judge's actions, although perhaps improper, were nonetheless judicial in nature:

> Chancellor Alissandratos was acting in his judicial capacity when he engaged in ex parte contact with the prosecutors and gave the prosecutors legal advice regarding ways that they could improve their case. . . . Tennessee Rule of Civil Procedure 65.03(1) authorizes a judicial officer to issue a restraining order prior to the commencement of legal action without notice to an adverse party. Moreover, Rule 65.03(2) provides that "[a] restraining order may be granted only by a judge of the court in which the action is pending or is to be filed." Because Chancellor Alissandratos is a judge of the court in which the public nuisance action against the nightclubs was ultimately filed, he was acting within his judicial authority when he met with the prosecutors from the district attorney general's office for the purpose of deciding whether to grant the temporary restraining order.
>
> Furthermore, even though Chancellor Alissandratos's participation in ex parte communications with the prosecutors in which he allegedly discussed tactics and planning of the lawsuits may have been improper under Tennessee law, see Tenn. Sup. Ct. R. 10, Canon 3.B.(7) (1998) (explaining that a judge shall not engage in ex parte communications with one of the parties unless "the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication"), these communications were nonetheless related to his general judicial functions, which include the authority to issue an ex parte restraining order prior to the commencement of a lawsuit. Tenn. R. Civ. P. 65.03. Indeed, even if we assume that Alissandratos committed "grave procedural errors" when he gave the ex parte legal advice, he still was acting within his judicial capacity because his conduct is related to those general judicial functions that a chancellor normally would perform.

11

Id. at 945-46.

Finally, in <u>Brookings v. Clunk</u>, 389 F.3d 614 (6th Cir. 2004), the Sixth Circuit held that a probate judge who filed a criminal complaint against the plaintiff, who was born female but completed a sex reassignment procedure to become "male," for knowingly making false statements in applications for marriage licenses, was entitled to absolute judicial immunity. In so holding, the Court rejected the view that the judge's act was prosecutorial rather than judicial:

> [I]n the instant case, it is illogical to conclude that Judge Clunk, although aware that Brookings had committed fraud upon the court in applying for a marriage license, was required to sit silently and refrain from reporting such conduct to the proper authorities, particularly in light of Brookings' continuing course of conduct in fraudulently applying for marriage licenses. Additionally, if litigants are able to perpetrate fraud on courts and subsequently threaten judges with personal liability for reporting such behavior, the integrity of the judicial system is jeopardized. Such actions and their attendant results would encourage litigants to act unlawfully and limit a judge's ability to address such conduct through proper avenues.

Id. at 620; see also id. at 622 ("Judge Clunk was engaged in a judicial act in swearing out a criminal complaint against Brookings upon learning that he had committed a crime in his court. Because Judge Clunk had information indicating that Brookings had falsified his application for a marriage license and had attempted to obstruct justice in a case then pending before him, he had a duty to report Brookings' conduct to the proper authorities. Therefore, we find that Judge Clunk's actions constitute a judicial act taken to preserve the integrity of the judicial system."). Likewise, because the judge's action had no connection with "his private, non-judicial life," and

because the controversy "arose directly from a visit to the judge in his official capacity," the Sixth Circuit held that the judge was acting in his judicial capacity. Id.

Applying these standards, it is clear that Judge Brown is entitled to absolute judicial immunity. This case is readily distinguishable from Lopez by virtue of the fact that the contempt petition was filed by attorneys McCrary and Micheel on behalf of Bardele. Thus, Brown did not initiate the contempt proceeding; instead, the parties came before Brown, in his judicial capacity, in connection with a petition duly filed on Bardele's behalf. Barrett, 130 F.3d at 255 ("The application of judicial immunity is simple and non-controversial when applied to 'paradigmatic judicial acts,' or acts of actual adjudication, i.e., acts involved in resolving disputes between parties who have invoked the jurisdiction of the court. . . . The touchstone for judicial immunity is the function of dispute resolution, or of authoritatively adjudicating private rights.") (citation omitted); Barnes, 130 F.3d at 1116 ("In examining the functions normally performed by a judge, courts have found that 'paradigmatic judicial acts' are those that involve 'resolving disputes between parties who have invoked the jurisdiction of a court.'"). The Sixth Circuit in Barnes found that this factor, standing alone, was sufficient to distinguish Lopez. 130 F.3d at 1119 ("Judge Winchell did not cause criminal charges that would otherwise not be brought to be levied against Ms. Barnes. The criminal allegations against Ms. Barnes did not belong to Judge Winchell; rather, they belonged to Scott and Caroline Barnes.").

13

The specific instances of "prosecutorial" conduct cited by plaintiff do not render the conduct of Judge Brown nonjudicial. As previously noted, see supra p. 7, a court does not examine whether the particular action of a judge, narrowly defined, is judicial but, instead, it must "look to the particular act's relation to a general function normally performed by a judge." Mireles, 502 U.S. at 13. Plaintiff has cited no authority for the proposition that questioning of a party by a trial judge, whether done to save time or to clarify a point, is sufficient, in itself, to strip a judge of judicial immunity. The judge's questioning of plaintiff occurred in a judicial proceeding in which the judge was the trier of fact. Even if it were assumed that the judge's actions were procedurally inappropriate—and there appears to be no basis for concluding that they were—they were plainly judicial in nature.

Finally, although plaintiff seeks to characterize Judge Brown's exercise of his civil contempt authority for acts committed in open court as prosecutorial, rather than judicial, he is incorrect as a matter of law. Barrett, 130 F.3d at 259 ("[A] judge's citation for contempt against a party who obstructs justice is a judicial act taken to preserve [the] integrity of the judicial system.").

For all the foregoing reasons, the Court DISMISSES the complaint, in its entirety, with respect to Judge Brown for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3) and Apple v. Glenn.[9]

---

[9] As the Court has held that Judge Brown is entitled to absolute judicial immunity as a matter of law, there is no occasion to discuss at length the reasons why he also is entitled to qualified immunity. McPherson v. Kelsey, 125 F.3d 989, 993-94 (6th Cir. 1997).

14

The plaintiff also cannot sue the remaining defendants under 42 U.S.C. § 1983, which encompasses violations of the federal Constitution or federal law by individuals acting under color of state law. "A § 1983 plaintiff may not sue purely private parties." Brotherton v. Cleveland, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997). The complaint provides no basis for state action in the conduct of defendant Bardele, a natural person who is alleged to be a party to an action filed in state court. Harmon v. Hamilton County Court of Common Pleas, 83 Fed. Appx. 766, 767 (6th Cir. Dec. 8, 2003). Similarly, private attorneys, such as defendants McCrary and Micheel, do not act under color of state law for purposes of § 1983. Smith v. Hilltop Basic Res., Inc., 99 Fed. Appx. 644, 646 (6th Cir. May 19, 2004); Harmon, 83 Fed. Appx. at 767 ("Here, the defendant attorneys did not act under color of state law as privately retained attorneys, although the acts alleged related to state court litigation."); Otworth v. Vaderploeg, 61 Fed. Appx. 163, 165 (6th Cir. Mar. 19, 2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); Catz v. Chalker, 142 F.3d 279, 289 (6th Cir. 1998); see Polk County v. Dodson, 454 U.S. 312 (1981) (holding that public defender does not act under color of state law for purposes of § 1983); McCord v. Bailey, 636 F.2d 606, 613 (D.C. Cir. 1979) (applying Polk County to retained criminal lawyers).

15

The plaintiff also has no claim against the defendants pursuant to 42 U.S.C. § 1985(3), which prohibits a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999).

As a preliminary matter, plaintiff does not adequately allege a conspiracy between the plaintiff, her attorneys, and Judge Brown. "[I]n order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired." Bryant-Bruce v. Vanderbilt Univ., Inc., 974 F. Supp. 1127 (M.D. Tenn. 1997); see also Brooks v. American Broadcasting Cos., 932 F.2d 495 (6th Cir. 1991) (affirming denial of motion to amend to add § 1985 claim because "the allegations are too vague and conclusory to withstand a motion to dismiss"); Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984); Lindsey v. Allstate Ins. Co., 34 F. Supp. 2d 636, 645 (W.D. Tenn. 1999); cf. Gutierrez v. Lynch, 826 F.2d 1524, 1538 (6th Cir. 1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a claim."; dismissing § 1983

16

conspiracy claim). The complaint alleges no ex parte contacts between plaintiff or her attorneys and the judge and no extrajudicial agreement on how the contempt petition will be handled.

Moreover, the complaint, even construed liberally, Haines v. Kerner, 404 U.S. 519 (1972), does not allege that the defendants sought to deprive the plaintiff of the equal protection of the laws or that they were motivated by racial, or other class-based, invidiously discriminatory animus.

Accordingly, the Court DISMISSES the complaint, in its entirety, with respect to defendants McCrary, Micheel, and Bardele, for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3) and Apple v. Glenn.

The Court must also consider whether plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the plaintiff must file his motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

17

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. It would be inconsistent for a district court to determine that a complaint does not warrant service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss the complaint for lack of subject-matter jurisdiction also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by the plaintiff is not taken in good faith. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. Accordingly, if plaintiff files a notice of appeal, he must pay the $255 appellate filing fee in full or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 6th day of June, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 3 in case 2:04-CV-02809 was distributed by fax, mail, or direct printing on June 9, 2005 to the parties listed.

---

Michael Jay Dulin
95 Estate Drive
Eads, TN 38028

Honorable J. Breen
US DISTRICT COURT